INTERNATIONAL SILVER CO. v. SIMEON L. & GEORGE H. ROGERS CO. et al.

(Circuit Court, D. Connecticut.   August, 1901.)

No. 1,068.

1. TRADE-MARKS—INFRINGEMENT—PRELIMINARY INJUNCTION.
    The original firm of Rogers Bros., composed of three brothers, first established the business of manufacturing silver-plated ware in this country by the electro-plate process, and their goods, with the name "Rogers Bros." stamped thereon, acquired a high reputation. They

were succeeded by different corporations, each of which acquired the right to use the name "Rogers" as a trade-mark, and continued to use the same stamped upon their wares in various forms, among which were "1847, Rogers Bros.," and "Rogers" preceded and followed by the figure of an anchor. In 1898 complainant acquired the property and business of all such corporations, including their trade-marks, which it has since used. In 1900 the defendant corporation was organized under the name "Simeon L. & George H. Rogers Company," and commenced the manufacture and sale of silver-plated ware upon which it stamped the name "Rogers" in different forms, among others, "S. L. & G. H. Rogers Bros.," and "S. L. & G. H. Rogers Co.," the initials in each case and the "Co." being in the form of a monogram, which, owing to its small size, was not readily decipherable. Simeon L. and George H. Rogers, who together owned about one-eighth of the stock issued, were sons of one of the original Rogers brothers, but neither had previously been engaged in the manufacture of plated ware, although one had been employed in the business as a workman for wages. The active managers of the corporation were men whose names did not appear in its own name. *Held*, that the names "Rogers" and "Rogers Bros." constituted the substantial and distinctive part of complainant's trade-marks, and that it was entitled to a preliminary injunction restraining defendant from using them on its goods, with or without a preceding or succeeding emblem or symbol or initials, or in any manner which simulated complainant's trade-marks.

**2. SAME—UNFAIR COMPETITION.**

Defendant also, in its advertising matter, and on its labels and wrappers, displayed the names of S. L. & G. H. Rogers, with the assertion that they were "the only real Rogers Bros.," and that the goods were "the real Rogers goods." *Held*, that such action was clearly for the purpose of impressing upon the public the belief that defendant was the manufacturing successor of the original firm, and constituted unfair competition, against which complainant, as the actual successor to such business, was entitled to a preliminary injunction; but that whether or not defendant should be enjoined from the use of its corporate name, as having been adopted solely for the purpose of creating unfair competition, would not be determined until a final hearing.[1]

In Equity. Suit to enjoin infringement of trade-marks and unfair competition. On motion for preliminary injunction.

Hiram R. Mills and John P. Bartlett, for complainant.
John R. Buck and Charles L. Burdett, for defendants.

SHIPMAN, Circuit Judge. This is a motion for a preliminary injunction. Some of the historical facts in this case also existed in R. W. Rogers Co. v. Wm. Rogers Mfg. Co., and were stated in 17 C. C. A. 576, 70 Fed. 1017, as follows: "About forty years ago, three brothers, by the name of Rogers, composed a firm in Connecticut under the style of 'Rogers Bros.' This firm first applied the art of electro-plating to the manufacture of silver-plated ware in this country, and acquired by steadfast integrity a high reputation for the sterling quality of their ware, and the name of 'Rogers Bros.' stamped upon the back of the goods also obtained a widely extended reputation." A corporation called the "Wm. Rogers Manufacturing Company" was "the successor of the business established in 1865 by William Rogers, one of these brothers, and was after 1872 enga-

---

[1] Unfair competition in trade, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

ged in manufacturing and selling silver-plated ware, and continued the trade-marks upon such goods which its predecessor adopted in 1866, viz. '1865, Wm. Rogers Mfg. Co.,' and 'Wm. Rogers & Son.'" It also used, from and after 1877, the following mark: "[Figure of Anchor] Rogers [Figure of Anchor]." "Two other corporations acquired from one or more of these brothers the right to use the name 'Rogers' also, and for a number of years last past the goods of these corporations, called in the speech of the public, 'Rogers goods,' have maintained a high character and a well-known reputation." One of these corporations was the Meriden Britannia Company, which adopted, in 1862, as a trade-mark, the following: "1847, Rogers Bros." Another corporation, Rogers & Bro., established in Waterbury, Conn., used as a trade-mark "[Star] Rogers & Bro." In May, 1898, the complainant, called the "International Silver Company," was formed, which bought or acquired the entire capital stock or properties of 14 silver-plating corporations, including the William Rogers Manufacturing Company, the Meriden Britannia Company, and the Rogers & Bro., and obtained by purchase or assignment the ownership of all their trade-marks, and now owns and controls the business of all the original Rogers companies, with the good will and trade-marks of each. The manufacture of the same goods to which their trade-marks were applied is continued by the complainant, the trade-marks are applied, the trade-mark goods are advertised as aforetime, and the exclusive right to the use of these marks is in fact, and is considered to be, of great value. To the goods formerly manufactured by the corporations not entitled to use the Rogers marks the trade-marks are not applied. In May, 1898, when the consolidation took place, the factory of the William Rogers Manufacturing Company was in Hartford. William H. Watrous was, and had been from 1879, its president and controlling manager, and was well known as a practical and skillful manufacturer; John McFadyen was, and had been for many years, its superintendent; and Samuel McFadyen had been also for many years its treasurer and bookkeeper. These officers were of known reputation and skill in their respective departments. The manufacturing business was continued in the same factory, and these gentlemen remained in the positions which they had formerly occupied until December 8, 1900, when the two McFadyens resigned. Watrous resigned as president and manager in January, 1901, and in March, 1901, resigned as a director of the complainant. On October 3, 1900, a corporation with a nominal capital of $200,000 was organized in Maine under the name of "Rogers Bros. Mfg. Company," to carry on, among other things, the silver-plating business. Simeon L. Rogers, George H. Rogers, John McFadyen, Samuel McFadyen, and Henry L. Cram, of Portland, Me., each subscribed for 1 share, and 1,995 shares remained unissued. On January 16, 1901, the name was changed to "Simeon L. and George H. Rogers Company." It established a factory in Hartford, and silver-plated ware was first put upon the market about the last week of February, 1901, and by May, 1901, it began to do a little business, which has gradually increased, and apparently has been vigorously pushed.

Simeon L. Rogers and George H. Rogers were the sons of Simeon S. Rogers, one of the three brothers who composed the original firm of Rogers Bros. George H. Rogers has, either as tenant or employé, been a farmer and had no connection with the business of silver-plating until this company was formed. Simeon L. Rogers was born in 1844, and died July 21, 1901. At the termination of the Civil War he learned the business of burnishing, and for years worked in various silver-plating shops in New Britain, Waterbury, and Shelton as a maker of blanks for plating. From September, 1888, to September, 1900, he was pressman in the forge department of the Silver-Plate 'Cutlery Company in Shelton, was engaged in cutting out steel knives and forks on the press upon an average compensation of $2.50 per day. He was not a manufacturer, but was a workman upon wages by the day or week. Mr. Watrous was a nephew of Simeon S. Rogers, and the two McFadyens are brothers of Mrs. Watrous. On July 21, 1901, Simeon L. Rogers and George H. Rogers each owned 49 shares of the capital stock of the defendant company, of the par value of $4,900. The two amounts are said to be "about one-eighth of the capital stock which has been subscribed for and issued up to" August 10, 1901. From February 20, 1901, to May 10, 1901, the silver-plated wares of the defendant were marked as follows: "[Maltese Cross] Rogers [Maltese Cross]," "[Cross] Rogers Bros. [Cross]," "[Cross] S. L. & G. H. Rogers [Cross]." The cross was dropped, and from April 20, 1901, to May 10, 1901, an acorn was substituted, and the goods were marked as follows: "[Acorn] Rogers [Acorn]," "[Acorn] Rogers Bros. [Acorn]." The acorn was then dropped, and from May 10, 1901, the goods have been stamped as follows, the letters "S. L. & G. H. Co." appearing in monogram: "S. L. & G. H. Rogers Bros.," "S. L. & G. H. Rogers Co." It will be remembered that the Meriden Britannia Company, and its successor, the complainant, have continuously used "1847. Rogers Bros.," and that the William Rogers Manufacturing Company and its successor have continuously used "[Anchor] Rogers [Anchor]." The monograms of the defendant, when reduced to the size necessary for stamping them upon the back of a spoon or fork, are too small to be easily deciphered by a person with no previous knowledge of their meaning. Such a person simply understands that they represent something, and consequently the name "Rogers" or "Roger Bros." is both the prominent and the legible imprint upon the article. I have mentioned only the trademark rights which appertained to these corporations, without reciting their history, or the history of the trade-mark rights of any other corporation. It is unnecessary to go more minutely into that part of the case, because the history of the various Rogers marks has been two or three times the subject of careful analysis in the Connecticut court of last resort. Britannia Co. v. Parker, 39 Conn. 450, 12 Am. Rep. 401; Manufacturing Co. v. Simpson, 54 Conn. 527, 9 Atl. 395; Rogers v. Rogers, 53 Conn. 122, 1 Atl. 807, 5 Atl. 675, 55 Am. Rep. 78.

It can hardly be denied that the defendant has no right to the use of "Rogers Bros." or of "1847, Rogers Bros.," or of "[Anchor] Rog-

ers [Anchor]"; but it is said, "We have a right to the use of our whole name, and we prefix our initials to 'Rogers Bros.' and to 'Rogers,' and we add to 'Rogers' the letters 'Co.'" In point of fact, these prefixes and suffixes are obscure, and, to the ordinary observer, enigmatical. They actually convey no meaning. The marks simulate the marks of the complainant, and, under the guise of monograms, present the appearance of the marks of the complainant. The motive for such simulation was the advantage to be gained by misleading the purchaser at retail to the belief that the articles so stamped are what the public calls "Rogers goods." Neither can the defendant corporation simulate the marks of the complainant by the use of the name "Rogers Bros.," or "Rogers" with or without a preceding or succeeding emblem or symbol or initials. These names are the substantial and distinctive part of the trade-mark in the mind of the purchasing public.

The bill is for the restraint or prevention of the infringement of trade-marks, and of unfair competition in trade in connection therewith, and asks for a preliminary as well as permanent injunction against the use upon silver-plated ware of the mark "Rogers Bros.," whether alone or accompanied by a symbol or monogram, and against the use of a mark consisting of the word "Rogers," either alone or preceded or followed by some symbol or monogram; in other words, the bill asks for an injunction against the simulation of the complainant's trade-marks upon silver ware, and asks for a like injunction against the use of the corporate name "Simeon L. & George H. Rogers Co." in connection with the business of manufacturing and selling silver-plated ware, upon the ground that the adoption of this corporate name was a fraudulent attempt to gain the benefit of the manufacturing reputation of the corporations known as the original "Rogers" companies. There is no adequate reason why a preliminary injunction should not issue as prayed for against the simulation of the complainant's marks upon silver ware, especially against the use of the marks heretofore used; and the simulation is sufficiently complete when "Rogers Bros." or "Rogers" is plainly presented, either alone or accompanied by some symbol or emblem or hieroglyphical device.

A preliminary injunction against the use of the defendants' corporate name remains to be considered. The charge is that the individual defendants conspired to create a corporation which should have a pretended color of right to use the name "Rogers" for the purpose of deceiving the public into the belief that the promoters of the corporation were the manufacturing successors of the original Rogers Bros., and thus to create, by means of the deception, an unfair and tricky competition in trade with the complainant. The history of the corporation, which the individual defendants, with the exception of Watrous, formed, is relied upon to support the charge. Watrous is not a stockholder in the defendant corporation. He is its adviser, and its advocate before the public. The circular of March 19, 1901, which offered to the public "real Rogers goods," was signed "The Simeon L. and George H. Rogers Co., by W. H. Watrous"; but, as he is not pecuniarily interested in the new corporation, his

connection with it need not be commented upon. That the name of the corporation was selected solely for the benefit which would accrue from the name of "Rogers," and not for the benefit which would accrue from the services or reputation of Simeon L. or George H. Rogers as silver platers, is manifest. George H. Rogers was a farmer as tenant or employé. Simeon L. had been a workman in silver-plating factories, had the reputation which other workmen of mature years ordinarily have, but he brought no peculiar elements of success to the new business except the declaration that he was the son of one of the original members of Rogers Bros. The McFadyens had an acquired and deserved reputation in the silver-plating business, and were to be the active managers of the corporation, but their name did not appear. On the contrary, in advertisements and upon labels or upon wrappings the names of Simeon L. Rogers and George H. Rogers are displayed, with the assertion that they are "the only real Rogers Bros." in the business. The advertisements speak of them as "the real Rogers," and say that the goods of the defendant corporation are "the real Rogers goods." The defendants say in one of their affidavits that the object of these advertisements was to counteract similar assertions in the advertisements of C. Rogers & Bros., of Meriden, who are not descendants of the original Rogers firm, but who, having been silver-plate manufacturers, thereafter, some years ago, went into the business of plating flat ware, and are competitors of the complainant, as they were of its predecessors. C. Rogers & Bros. had issued advertisements containing pictures and assertions that they are the only living Rogers Bros. making silver-plated ware. This reason for the action of the defendant corporation existed, but it had also a broader motive, which was to impress upon the public the belief that its business is a continuation of the character and the business of the original firm, and of gaining thereby an advantage over those who are the rightful successors in the same business. This practice shows the unjustifiable use which the corporation is attempting to make of the position of the two sons of Simeon S. Rogers in its business, and these assertions should be restrained by injunction.

The defendant corporation has been careful to assert that it was not in the trust, and that it had no connection with any other Rogers company or trade-marks. The two arguments which it has presented for the favor of the public have been that it was a Rogers company, and was not in the trust, and, so far as it has asserted that its goods were not those of any other company, but were made by itself, its statements are worthy of commendation. If this case was at final hearing upon precisely the same evidence that is now presented, the history of the corporation would strongly tend to the conclusion that its name had been selected unnecessarily for the purpose of unfair competition, but I am unwilling, by a preliminary injunction, to forthwith restrain the corporation from any use of its corporate name, to which it may be considered to have had a color of right by reason of the fact that Simeon L. Rogers was a workman in silver plate. I prefer that the question of an entire change of

name should be left until the test of cross-examination shall have been applied to statements made in affidavits. Let a preliminary injunction issue as heretofore directed in the opinion.