WM. A. ROGERS, Limited, v. ROGERS SILVERWARE REDEMPTION
BUREAU, Inc.

(District Court, S. D. New York.   December 20, 1917.)

1. TRADE-MARKS AND TRADE-NAMES ⬤⟶73(2)—RIGHT TO USE OF NAME.
   Complainant, a manufacturer of silver-plated ware doing business un-
der the name of "William A. Rogers, Limited," had the exclusive right
to the name "William A. Rogers," and also a qualified right to use the
name "Rogers," with its own trade-marks as registered.   Defendant
began the use of the name "Rogers" in its corporate title, and com-
plainant protested.   After negotiations the parties entered into a con-
tract reciting that whereas, defendant desired to continue the use of the
name "Rogers" as a part of its corporate name under which it should do
business, and to make use of such name in connection with its business of
the redemption of silver-plated ware, complainant consented solely for
itself to the use of such name on condition of strict performance by de-
fendant of all its covenants.   Defendant was engaged in a trading stamp
business and redeeming silverware given for trading stamps.   Complain-
ant, contending that defendant's canvassers made misrepresentations as
to defendant's business, in saying that they represented complainant,
sought to enjoin defendant from further using the name "Rogers."   Held
that, as the contract between the parties provided for sale only of com-
plainant's silverware by defendant, and as there were contractual re-
lations between the parties, such misrepresentations by defendant's solici-
tors and agents do not, it appearing that they were not consented to by
defendant, warrant enjoining defendant from continuing to use the
name "Rogers" on the ground of its breach of contract; this being par-
ticularly true as the testimony as to misrepresentations might in a way
have resulted in part from hearsay.

2. TRADE-MARKS AND TRADE-NAMES ⬤⟶93(1)—KNOWLEDGE—PRESUMPTION.
   In such case, as complainant was charged with full knowledge of de-
fendant's business, it must have known that it was necessary for de-
fendant to send agents as representatives through the country soliciting
trade.

3. TRADE-MARKS AND TRADE-NAMES ⬤⟶73(2)—RIGHT TO USE OF NAME.
   In such case, though another was also entitled to a qualified use of the
name "Rogers," defendant is not, the parties having contracted at
arm's length, and complainant having consented merely to defendant's use
of the name of "Rogers," in which it had a valuable right, entitled to use
the name "William A. Rogers" in its corporate title.

In Equity.   Bill by William A. Rogers, Limited, against the Rogers
Silverware Redemption Bureau, Incorporated, which sought affirma-
tive relief.   Bill dismissed, and affirmative relief denied.

Duell, Warfield & Duell, of New York City (R. W. France and J.
Boyce Smith, Jr., both of New York City, of counsel), for plaintiff.
Nathan Burkan, of New York City, for defendant.

MANTON, District Judge.   The complainant is a manufacturer of
silver-plated ware.   The defendant is engaged in a trading stamp busi-
ness.   On January 26 and May 5, 1916, plaintiff and defendant con-
tracted, among other things, that the defendant might use the name
"Rogers" in its corporate name in accordance with the terms of said
agreement, and the defendant contracted to purchase the silver-plated
ware of the plaintiff, and no other, in redeeming the trading stamps

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which it contracted to redeem for its various customers throughout the country. The defendant further agreed to carefully avoid misleading representations, and promised "strict performance" of the contract on its part. The plaintiff sues, claiming that the defendant violated the terms of the contract in failing to carefully avoid misleading representations and in carrying on its business in a way to violate this provision of the contract. Defendant alleges that the plaintiff did not have the right to use or license others to use the name "Rogers" in connection with marketing or selling silver-plated ware, and that the exclusive right to use the name "Rogers" in connection with silver-plated ware belongs solely to the International Silverware Company, and it asks, as affirmative relief, that the plaintiff specifically perform the agreements, and that the defendant be decreed the right to use the prefix "Wm. A." in conjunction with the name "Rogers" in its corporate title and in its business of redeeming silver-plated ware of the plaintiff's manufacture in the operation and prosecution of its business.

[1, 2] Prior to the date of these contracts, the defendant began the use of the name "Rogers" in its corporate name, and this resulted in a notice of protest sent to it by the plaintiff. Negotiations followed, and resulted in the contracts in question. The contract recites that:

"Whereas, the party of the second part desires to continue to make use of the name 'Rogers' as a part of its corporate name under which it does business, and to make certain defined use of the name of the party of the first part in connection with its business of the redemption of silver-plated ware;" and whereas, "the party of the first part is, for itself and *solely* for the parties hereto, willing to consent to such use, subject to the strict performance by the party of the second part of each and all of its covenants and agreements as heretofore set forth," etc.

In view of these negotiations and the phraseology of the contract, I think that the claim of the defendant that the plaintiff undertook to confer the right to use the name "Rogers" upon the defendant is unfounded. All the contracts of January 26 and May 5, 1916, provided was that the defendant consented for itself alone to the use of the name "Rogers" so long as the defendant made no misleading representations, and maintained the standard of business conduct promised by it. The defendant's attack upon the plaintiff's right to the name "Rogers" and the validity of its various trade-marks need not be passed upon on this application, for it is not necessary to this decision. Plaintiff's right, however, to its trade-mark, and to use the name "Rogers" has been the subject of much prior litigation, and the attack made upon it is without merit. The plaintiff has a valuable property right in its name and trade-marks, and this has been fully determined heretofore by judicial authority. Rogers v. Wm. Rogers Mfg. Co., 70 Fed. 1019, 17 C. C. A. 575; Wm. Rogers Mfg. Co. v. Rogers (C. C.) 84 Fed. 639, affirmed 95 Fed. 1007, 37 C. C. A. 358; William A. Rogers, Limited, v. Cohannet Silver Co. (C. C.) 186 Fed. 241; William A. Rogers, Limited, v. H. O. Rogers Silver Co. (D. C.) 237 Fed. 887; Wm. A. Rogers, Limited, v. International Silver Co., 30 App. D. C. 97; Wm. A. Rogers, Limited, v. International Silver Co., 34 App. D. C. 410; Wm. A. Rogers, Limited, v. International

Silver Co., 34 App. D. C. 413; Wm. A. Rogers, Limited, v. International Silver Co., 34 App. D. C. 484.

The plaintiff does not contend that it has an exclusive right to the use of the name "Rogers," but claims the exclusive right to the name "William A. Rogers," and to the use of its own trade-mark as registered, with the name "Rogers" and particular symbols, and it also has a qualified right in the use of the name "Rogers" standing alone, which, while not permitting it to enjoin the use of the name by any other legitimate Rogers Company, whose rights have been established, does permit it to enjoin the unauthorized use of the name "Rogers" by persons having no rights therein. It appears that the International Silver Company also has a right to the use of the name "Rogers," and that it has protested against the use of the name "Rogers" by the defendant. There is nothing in the contract, nor can it be read in the contract, that the plaintiff has guaranteed the defendant the use of the name "Rogers" as against any other who may have a qualified use of the name "Rogers." The plaintiff has not contracted nor obligated itself in any such terms. Neither the plaintiff nor the International Silver Company has the right to the name "Rogers" per se, unaccompanied by their own particular initials or trade-mark, but both the International Silver Company and the plaintiff have the right to restrain the unauthorized use of the name "Rogers" by persons without rights therein. Their mutual rights were considered in the cases of Wm. A. Rogers, Limited, v. International Silver Co., 30 App. D. C. 97, and Id., 34 App. D. C. 410. There it was said:

"The sole use of his name for the time prescribed was enough, we think, to constitute an exclusive use of the mark within the meaning of the proviso. The opposer did not show any right to use the mark or name 'Wm. A. Rogers,' but only those of 'Wm. Rogers Mfg. Co.' and 'Wm. Rogers & Son.' In view of what has been heretofore said, it is unnecessary to consider whether, if these were all technical trade-marks, the applicant's mark so closely resembles the others as to constitute an infringement. Each party is entitled to use his own name, actually or legally acquired, without regard to the confusion that may result from similarity. No right of property will be concluded by the registration of appellant's mark."

Therefore, the defendant having begun an unlawful use of the name "Rogers," and after protest having contracted with the protestor, and having obtained a consent from the plaintiff alone that it might use the name "Rogers" on condition of the defendant's living up to its promises, it remains to be determined whether or not there has been a breach of the agreement on the part of the defendant.

The plaintiff must be charged with full knowledge of the kind of business the defendant was engaged in, and with the fact that it was necessary to send selling agents or canvassers about the country in the furtherance of its business. It is claimed by the plaintiff that in at least 13 cases statements were made by canvassers which were misleading, and which were not truthful, and that such misleading representations were violations of the "strict performance" provision of the contract. I am asked to accept the claim of the defendant, for the reason that the 13 different instances of misstatements or misrepresentations are found in widely scattered parts of the country, and that this constitutes strong evidential proof of its truthfulness. The

testimony of the 13 witnesses was taken by deposition, and has resulted in the use of most general language, the substance of which is that the agents of the defendant stated that in some instances they represented Wm. A. Rogers, Limited, and that this was a new medium of advertising by the plaintiff; that it was found much cheaper than extensive advertising in the Saturday Evening Post and other magazines. The language used by each witness, however, is given with some hesitancy as to recollection, and lacks probative force. Then, too, each of the 13 witnesses received a communication from the plaintiff or its attorney, which to some extent indicated about what they testified to.

I do not say that this was improper, for, indeed, it was the least costly way for the plaintiff to secure information, in view of the distance the witnesses lived from the plaintiff's place of business; but, on the other hand, it can readily be seen that distant merchants, whose suspicions were aroused as to the legitimacy of the defendant's business, might well add to their suspicion by such an inquiry from the plaintiff, and let it cumulate in the belief that the defendant and its agents were perpetrating a fraud. It is possible to conceive of a visit in search of business and explanation of its scheme by the defendant's agents, without some coloring of their proposition in the hope of obtaining business. Unless this reached the stages of fraudulent misrepresentations, and such were made with knowledge by the officers of the company, it does not reach the standards of such conduct as should result in a cancellation of this contract under its provisions. The defendant's officers have testified and disclaimed any such knowledge of misrepresentations, and have stated that each agent was instructed to guard against making misrepresentations; each agent was told to state the proposition as an advertising medium for the merchant, with profit to the customers and with profit to the defendant.

The defendant was trying for success in its business, and could only reach this goal by legitimate business methods; for otherwise it would soon not only be discovered, but fail. Its scheme of business is ingenious. It is illustrative of the magnitude of small profits with large volume of business. Where, as here, there may have been some misrepresentation—for I am inclined to believe that there was—I am satisfied that it was not with the consent or knowledge of the officers of the company, and I do not think that, under those circumstances, the plaintiff should be relieved from the terms of the contract.

Then, too, it must be remembered that a statement, made by an agent, that he represented the Wm. A. Rogers Company, is to some extent true; for he did indirectly, in the sense that the contract provided for the sale only of the Wm. A. Rogers silver-plated ware, and the use therefore of the name of the plaintiff was not forbidden. In the Puckett Case, where a card was used improperly, it was satisfactorily explained that the card was printed through error, and this error was at once corrected, and immediate steps taken to prevent its recurrence. In the case of the Hygenic Baking Company, the dissatisfaction there expressed seems to be pivoted about a dissatisfaction with the terms of the contract. One can well conceive how, in informing the merchant of the source of the goods, by whom manufactured, that

the curiosity or imagination of the visited merchant would lead him to believe the agent represented the plaintiff. Indeed, I think the plaintiff should be charged with the expectation that this would flow as the consequence of such a contract as it has made.

This confusion is illustrated by statements of the witnesses, on the one hand, that they have seen advertisements for Rogers' silver-plated ware in the Saturday Evening Post, when it is conceded that the plaintiff did not advertise in the Saturday Evening Post, but the International Silver Company did so advertise, using its trade-mark "Rogers" and symbols. This is simply illustrative of the error into which the witnesses may have fallen. There were many thousands of contracts made throughout the country, and the only alleged misrepresentations or false statements are charged in 13 instances alone, and these are denied by defendant's agents, and knowledge thereof is denied by the defendant's officers.

In Jos. Schlitz v. Houston Ice Co., 241 Fed. at page 824, 154 C. C. A. at page 519, it was said:

"There is evidence in the record that agents of the defendants advised purchasers of defendants' bottled beer in brown bottles with brown labels that it might be sold as plaintiff's beer to their customers. The defendants deny any knowledge of any such representations by their agents, and deny that any authority was given their agents to make such representations. The District Court found the facts against the plaintiff on this issue, and dismissed the bill, either because not satisfied that the representations were made by the agents, or, if made, that they were authorized by the defendants, or known to them. Occasional misrepresentation of soliciting agents, not shown to have been known to or authorized by defendants, would afford no ground of relief on the ground of unfair competition, apart from an improper dress for their goods."

The evidence here does not warrant my finding that there was a breach of the provision which says:

"The party of the second part further agrees at all times to maintain and conform to the high standards and business conduct, and careful to avoid making misleading representations of any kind and particularly as to the source of manufacture or character of silver-plated ware in which it deals or in respect to its business."

[3] As affirmative relief, the defendant asks that the contract be reformed, so as to allow the defendant to use the name "William A. Rogers" as part of its corporate name. The contract recites that the defendant "desires to continue the use of the name 'Rogers' as a part of its corporate name," and, further, that the parties are willing to 'consent to such use, and then it is agreed that, upon the performance of the conditions of the contract, such consent is given. Since the plaintiff had but a qualified use in the name "Rogers" in connection with Rogers silver-plated ware, the question is presented whether the contract should be so reformed that, in addition to the permission thus qualifiedly given to the use of the name "Rogers," the plaintiff should be obliged to consent to the use of the prefix "William A." in connection with the name "Rogers." The defendant in its brief says:

"The meaning conveyed (by the contract) was that as far as the plaintiff could give the right to use the name 'Rogers,' the defendant should have that right."

And it is argued that the defendant had no right to the use of the name "Rogers," except only in connection with the prefix "William A."; that is, in combination, "Wm. A. Rogers."

Above I pointed out that the plaintiff had a qualified use in the name "Rogers." It is only this qualified use that the plaintiff consented the defendant might have. In other words, it has but conferred the right of toleration in the use of the name "Rogers" upon the defendant; this is the contract the parties made. The plaintiff parted with consideration when it consented to such use, and it is not for the court to impose a further consideration by reforming the contract. The evidence satisfies me that the defendant was fully informed at the time it made the contract; if not, it should have made inquiry, and now, when it is confronted with the objection of the International Silver Company, it is too late to ask the plaintiff to give something more.

A decree may be entered, dismissing the complaint and denying the affirmative relief sought by the defendant.