**INTERNATIONAL SILVER CO. v. ONEIDA COMMUNITY, Limited.**

No. 330.

Circuit Court of Appeals, Second Circuit.

Aug. 17, 1934.

Rehearing Denied Oct. 31, 1934.

L. HAND, Circuit Judge, dissenting.

Bartlett, Eyre, Scott & Keel, of New York City (John P. Bartlett, Richard Eyre, Edward S. Rogers, and Ralph L. Scott, all of New York City, of counsel), for complainant-appellant.

Nims & Verdi, of New York City (Harry D. Nims, James J. Kennedy, Wallace H. Martin, M. L. Severn, and S. L. Whitman, all of New York City, of counsel), for defendant-appellant.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This suit is to enjoin the use of the name "Rogers" on silver-plated flatware and other tableware, as well as to enjoin the use of various trade-marks and to restrain unfair competition.

Complainant claims to be the successor of the original Rogers firm that began business in 1847 and attained a high reputation in the manufacture of silver plate. We think this position cannot be sustained so far as it seeks exclusive rights derived from the three brothers, William, Simeon S., and Asa H. Rogers, who began business together in Connecticut in 1847 and established a high reputation as faithful craftsmen in making table silverware by an electroplating process. The three Rogers stayed together until 1856, when William left the corporation which the brothers had formed, known as Rogers Bros. Manufacturing Company. He then joined others in a corporation known as Rogers Smith & Co., which manufactured silver-plated ware under the mark "Rogers Smith & Co. A 1." In 1862, Rogers Smith & Co. merged with the Rogers Bros. Manufacturing Company and under the marks "(Star) Rogers Bros. A 1," "Rogers Brothers," "Rogers Bros.," and "Rogers Smith & Company" continued the business until the concern became insolvent in 1862 and the assets, other than the good will and trade-marks, were distributed by the Connecticut probate court. Shortly after the failure, a new corporation called Rogers Smith & Co. was organized (in which no one named Rogers was interested), which was sold out to Meriden Brittania Company in 1863. About November, 1862, the original three Rogers brothers entered the employ of the Meriden Company without, however, obtaining any proprietary interest in that corporation. It was agreed that the company should not sell goods stamped with the name "Rogers" unless they bore the name or trade-marks of "Rogers Brothers." The goods were marketed by the company under the name "1847 Rogers Bros. A 1."

Asa H. and Simeon S. Rogers had left Rogers Bros. Manufacturing Company in 1858 and, before going into the employ of the Meriden Company, had established a business of their own at Waterbury, Conn., under the name of Rogers & Bro., using the trade-marks "Rogers & Brother A 1," "(Star) Rogers & Brother A 1," "(Star) Rogers & Bro. A 1," "(Star) R. & B."

In 1864, William Rogers left the employ of the Meriden Company and went into that

of William Rogers Manufacturing Company in Hartford, a partnership in which neither he nor any one named Rogers ever owned an interest. His son William Rogers, Jr., also associated himself with the concern. The trade-marks used by it were "(Anchor) William Rogers & Son AA," "William Rogers & Son," "1865 William Rogers Mfg. Co. AA," "William Rogers Mfg. Co.," "Rogers Nickel Silver," "(Anchor) Rogers (Anchor)."

In 1868, William Rogers again entered the employ of the Meriden Company and his son went with him.

In 1871, Asa Rogers and one Watrous organized Rogers Cutlery Company.

In 1878, Simpson, Hall, Miller & Co. was formed at Wallingford and employed William Rogers, Jr. It used the mark "(Eagle) Wm. Rogers (Star)."

In 1868, Cephas, Gilbert, and Wilbur F. Rogers, all being unconnected with the old Rogers family, founded a firm at Meriden under the name of C. Rogers & Bros. They used the trade-marks "C. Rogers & Bros." and "C. Rogers & Bros. A 1." It did not begin to manufacture silver plate until 1883.

In 1886, the Rogers & Hamilton Company was formed in Waterbury, with which none of the Rogers brothers was connected. It did not manufacture silver plate, but only hollow ware. Indeed, the original Rogers had all died; William Rogers in 1873, Simeon in 1874, and Asa in 1876.

It will be seen that prior to 1894, when William A. Rogers, who is defendant's predecessor, began business, the following concerns were in the business of manufacturing silver plate: Rogers & Bro., deriving title from Asa and Simeon Rogers in 1858; Meriden Brittania Company, deriving title from all three of the original brothers in 1862; William Rogers Manufacturing Company deriving title from William Rogers in 1865; Rogers Cutlery Company deriving title from Asa Rogers.

In addition to the foregoing, the following concerns: C. Rogers & Bros. (1868), Simpson, Hall, Miller & Co. (1878), and the Rogers & Hamilton Company (1886)—were in competition with the complainant's predecessors in 1894 when William A. Rogers, defendant's predecessor, entered the field.

In 1899, the complainant was organized and has purchased the business of the foregoing concerns. It seems plain that at that time the name "Rogers" did not designate any particular source of manufacture. The

first four concerns could trace back to the three brothers and possibly this was true of Simpson, Hall, Miller & Co. also, because of the connection with it of William Rogers, Jr., who had worked closely with his father in the William Rogers Manufacturing Company. But in Wm. Rogers Mfg. Co. v. Simpson, Hall, Miller & Co., 54 Conn. 527, 9 A. 395, 401, it was held that the William Rogers Manufacturing Company could not prevent Simpson, Hall, Miller & Co. from using the word "Rogers." The court said in that decision that: "The plaintiff has no greater right to prevent the misleading of consumers in the matter of calling the goods of both 'Rogers goods,' than it has to prevent the same result in the matter of using identical names accompanied by differing symbols as stamps." It was also held in a suit by Rogers & Brother v. C. Rogers et al., 53 Conn. 121, 1 A. 807, 5 A. 675, 55 Am. Rep. 78, that the former could not enjoin C. Rogers & Bros. from using the "name of 'Rogers' merely, upon their goods." As regards Rogers & Hamilton Company, another interloper, there is no proof that any attempt was made to stop its sales of "Rogers" goods, or that any of the original Rogers concerns objected to its use of the name. Thus, when the complainant came into the field, there were at least two, and probably three, concerns which had been using the name for years, with no proof that their workmanship was equivalent to the high order of plate that had made the silver of William, Simeon S., and Asa H. Rogers famous, or that they claimed to derive their title from the original brothers.

In 1894, William A. Rogers, defendant's predecessor, began selling silverware in New York. He started a fourth "Rogers" business in electroplated ware in competition with the companies deriving a commercial heirship from the three brothers and was followed in 1900 by a concern known as Simeon L. & George H. Rogers Company, organized under the laws of Maine, by two sons of Simeon S. Rogers, with a factory at Hartford, Conn.

In 1901, William A. Rogers incorporated his business and was engaged in substantial competition with the complainant in silver plate until the business was sold out to the defendant in 1929. It used the name "Rogers" as well as various special trademarks. In 1918, it had acquired the business of Simeon L. & George H. Rogers Company.

The complainant bought out all of the concerns that were competing with it when

it started business, namely, Rogers & Bro., Meriden Brittania Company, Wm. Rogers Manufacturing Company, Rogers Cutlery Company, Rogers Smith & Co., Simpson, Hall, Miller & Co., and the Rogers & Hamilton Company, but before the defendant entered the field by the acquisition of Wm. A. Rogers, Limited, there were outstanding the business of Wm. A. Rogers, and for twenty years afterwards that of Simeon L. & George H. Rogers Company. This makes it clear that the name "Rogers" simpliciter never meant solely the complainant's goods.

It is argued that complainant established by litigation that the name "Rogers" did mean its goods, but this is not so. This is first sought to be shown by the suits brought by Wm. Rogers Manufacturing Company, one of its predecessors. In Rogers v. Wm. Rogers Mfg. Co. (C. C. A.) 70 F. 1019, a preliminary injunction in its favor was reversed by this court, and the suit was later dismissed for lack of prosecution. In Wm. Rogers Mfg. Co. v. Wm. A. Rogers (C. C.) 84 F. 639, affirmed (C. C. A.) 95 F. 1007, Judge Lacombe denied a motion for a preliminary injunction, though William A. Rogers was advertising his goods as "Rogers goods" and the "genuine Rogers goods." In 1917, the suit was dismissed for lack of prosecution. In International Silver Co. v. Simeon L. & George H. Rogers (C. C.) 110 F. 955, Judge Shipman, in 1901, granted a preliminary injunction to the complainant restraining the defendant in that suit from using such terms as "the only Rogers Bros.," as well as "Rogers" and "Rogers Bros.," with or without a preceding or succeeding name or symbol, but did not enjoin the use of the corporate name. He found that the defendant had selected the name "Rogers" unnecessarily for purposes of unfair competition, and it is to be remembered that the defendant there had only just begun business in 1901 and had really built up no equity in its favor. The suit never came to final hearing, and in 1913 was dismissed for lack of prosecution. Under all the circumstances, the decision has no important bearing on the present controversy. Likewise in International Silver Co. v. Rodgers Bros. Cutlery Co. (C. C.) 136 F. 1019, a mere interloper had selected the name "Rodgers" to take away the complainant's trade. There an injunction was granted, but merely on the ground of fraud, and not because the name "Rogers" had acquired a secondary meaning. The scholarly opinion of Justice Swayze in the New Jersey Court of Errors and Appeals in International Silver Co. v. W. H. Rog-er's Corp., 67 N. J. Eq. 646, 60 A. 187, 189, 110 Am. St. Rep. 506, 3 Ann. Cas. 804 is to the same effect. There a mere interloper having no standing as a silversmith sought to capture complainant's trade. The court held that the fact that William A. Rogers, defendant's predecessor, "seems to have established the right to use the name," did not "enlarge" the rights of the interloper. See, also, International Silver Co. v. Rogers, 72 N. J. Eq. 933, 67 A. 105, 129 Am. St. Rep. 722.

That International Silver Company had no exclusive right to the word "Rogers" simpliciter was held in Wm. A. Rogers v. International Silver Co., 34 App. D. C. 410, and by Judge Manton in the District Court in Wm. A. Rogers, Ltd., v. Rogers Silverware Redemption Bureau, 247 F. 178.

It is argued that the complainant abandoned any right it may have had to use the name "Rogers" simpliciter, and that between 1900 and 1929 it advertised urging the public to disregard that word in buying Rogers' silverware and seek more specific marks. Among the phrases used for this purpose were:

"Don't say Rogers, say Wm. Rogers & Son."

"Not 'Rogers' only but '1847.' "

"There are other Rogers,—remember '1847.' "

"Remember the number '1847' as well as the 'Rogers Bros.' "

"There are other Rogers. Remember '1847.' "

"Remember the '1847,' as there are other 'Rogers.' "

"1847 was made part of the trademark to identify the genuine."

"There are many brands of 'Rogers' but there is only one '1847.' "

"1847 has been the mark that has distinguished the original brand of silver plated flatware."

"Although there are several makes of Rogers goods there is but one brand of 1847 Rogers Bros."

"There are other makes of 'Rogers' but only one '1847' Rogers Bros."

This, we think, does not show an abandonment of the right to use the name "Rogers" so far as that right existed, but only an insistence upon special distinguishing marks.

Between the date when complainant started and defendant's acquisition of the

property of William A. Rogers, the business of the latter grew to a very substantial volume, and it sold goods under brands which included the word "Rogers" to the amount of several million dollars. While it may not be possible to approximate accurately the amount of flat silverware which it sold that was advertised as Rogers' goods, or bore trade-marks with the name "Rogers" thereon, it is certain that business of that kind was substantial. Complainant allowed all this to go on, but was on friendly relations with William A. Rogers, Limited, and at times purchased goods from the latter. The suits which it had brought against William A. Rogers in 1895 and 1898 in order to stop the use of its name did not succeed and were discontinued in 1917. In view of complainant's disregard of the name "Rogers" simpliciter and its failure to make any steady attempt to prevent its use by others, we must hold that it had no exclusive right to the use of that name.

But it may be argued that, even if the defendant has the right to use the name "Rogers" simpliciter, it has traded so unfairly that it should be denied that use and confined to its specific marks. One misrepresentation it has made is in its guaranty by Simeon L. & George H. Rogers Company, Inc. The old Simeon Company, the business of which defendant purchased, was dissolved, and the guaranty was by a company with only nominal assets, and defendant's name does not appear on it. On the face of each guaranty is a picture of the original Simeon Rogers and his sons George and Simeon. This was a direct attempt to trade on the reputation and skill of one of the original brothers from whom complainant's, and not defendant's, good will may be regarded as in part derived.

The green advertising pamphlet of defendant (Exhibit 47) which its salesmen passed on to dealers was also intentionally misleading. It dealt with silver sold under the mark "1881 (R) Rogers (R)." It says that "its name has been universally accepted for half a century as representing unusual value in silverware in a vast moderate priced market," and adds that these advertisements "are new links in a great chain of advertising continuing thru generations * * * creating a great name in silverware." As a matter of fact, the mark "(R) Rogers (R) 1881" was not used before 1901, and "1881 (R) Rogers (R)" until 1910. Neither had in any sense been used "thru generations." The circular was obviously intended to represent that the reputation of defendant's

Rogers plate was derived from the original brothers and that its excellence in silver plating came from the teachings in faithful workmanship of those men and the concerns with which they were associated. Nothing could be better calculated to misrepresent the truth. As a matter of fact, 1881 was a date having no significance except that of an unfounded antiquity. The mark was a deceptive imitation with the misleading variant "1881" of "(Anchor) Rogers (Anchor)." Indeed, "(R) Rogers (R) 1881" was held a deceptive imitation of the latter mark in Wm. A. Rogers, Limited, v. International Silver Co., 34 App. D. C. 413, and the only basis for tolerating a mark in which 1881 was placed at the beginning, rather than the end, is laches or estoppel. But there can be no justification for allowing it to be used unqualified after defendant began to represent that it was derived from the original Rogers. The intention to trade on complainant's name is further shown by the words printed in large letters at the top of the second page of the pamphlet (Exhibit 47): "National Advertising and Dealer Aids." The complainant has advertised its goods on a large scale, and the defendant practically not at all. Advertisements in the Saturday Evening Post of "Wm. A. Rogers Heirloom" and of "1881 (R) Rogers (R)" (each inserted in a single issue) were sent to dealers with frames for exhibition in stores. Later other printed advertisements of the same size, described by the defendant as "Saturday Evening Post size advertising" or "reprints" were distributed to the dealers for insertion in these frames. These later advertisements were not published anywhere. This seems to have been a deliberate attempt to trade on complainant's advertising and to lead the public to suppose that the silver advertised in the frames was that of the old Rogers brands that were then being nationally advertised. The use of the terms "Genuine Rogers," "Famous Rogers," and "Celebrated Rogers" under the foregoing conditions shows, we think, both a purpose and a tendency to lead the public to believe that the defendant's goods are associated with those of the original Rogers or their successors who made Rogers plate famous.

Such acts on defendant's part, accompanied by instructions to its salesmen to "stuff your cars with cotton and say Rogers" inevitably led to all kinds of misleading representations by its enthusiastic dealers. For example, "a genuine Wm. Rogers Silver Tea-spoon," "We feature the nationally Rodgers Bros. lines in both Community

and Tudor," a "Wm. Rogers" set, were misleading descriptions by defendant's dealers who did not distinguish between the original William Rogers and his successors and William A. Rogers and his company that defendant has acquired.

The so-called initial line "R. S. Mfg. Co." was made of the cheapest plated ware and sold under conditions in which the public might well believe it was complainant's product. From the sort of competition that defendant conducted or promoted there arose a deception and confusion due to its deliberate acts. There is no such corporation as "R. S. Mfg. Co.," though the boxes in which silverware thus marked is sold carry the name "R. S. Mfg. Co." as the maker and guarantor. One Abelson was sued by International Silver Company for advertising a "R. S. Mfg. Co." set of table silver as "Rogers World Famous Silver Plate." The set was worth only about $7, and sold for $19.95. Thus he put on the market not only an inferior article, but one sold at a price indicating good plate under a name which, because of defendant's method of merchandising, was likely to lead the public to suppose it was manufactured by complainant. Defendant appears to have taken no affirmative steps to stop this, but, on the contrary, paid the expenses of Abelson's defense in the suit brought by the complainant against him. This sort of deliberate misuse of the name "Rogers" is bound to injure complainant's trade and is palpably unfair.

Misrepresentation and confusion by defendant's customers for which we believe it is to a substantial extent responsible are bound to injure complainant's reputation and business. Thus we find in Howard's advertisement of "R. S. Mfg. Co." plate that "Wm. Rogers" is represented to be the maker and guarantor. Still another advertisement reads that the ware on sale is "made and guaranteed by Wm. Rogers." Such advertising confuses the cheap ware of William A. Rogers with the ware of William Rogers, one of the original brothers. Four dealers were discovered who had put defendant's plate in complainant's containers. The newspaper advertisement of another dealer specified ware of defendant as "1847 Rogers Bros. Silverware Half Price," though the ware was unplated nickel silver. These illustrations might be multiplied ad infinitum. They are not, in our opinion, due merely to the vagueness of the meaning of the word "Rogers" open to use by either party, but are also due, at least in part, to the misrepresentation and confusion which the reckless and

unfair mode of competition carried on by the defendant has caused.

It is to be noted that there was a marked difference between the advertising of the defendant and its predecessors in business, in that the latter used their own names in advertising, such as Simeon L. and George H. Rogers, S. L. & G. H. R. Co. and Wm. A. Rogers, and that about the only marks used that suggested Rogers simpliciter were "(R) Rogers (R)" and "1881 (R) Rogers (R)," which were deceptive marks for the reasons above stated. The defendant, on the other hand, began a huge deceptive and confusing campaign which, in our opinion, has gone beyond anything its predecessors did both in volume and consistent intent.

■■ While defendant's conduct has not been bad enough to deprive it of the use of the name "Rogers" or of the marks "Wm. A. Rogers Heirloom" or "R. S. Mfg. Co.," its advertising and propaganda seem to make it necessary to differentiate its goods from complainant's in all advertising matter and containers relating to flatware, whether marked with the initial marks "(Maltese Cross) W. R. (Keystone)," "S. L. & G. H. R. Co.," or "R. S. Mfg. Co.," or marked with "Wm. A. Rogers Heirloom" in any way, or with "Wm. A. Rogers" followed by "R" in a horseshoe, or "1881 (Wreath) Rogers (Wreath)," or "(Wreath) Rogers (Wreath)" with "1881" above and "Quadruple Plate New York City" below, or marked with "(Wreath) Rogers (Wreath)" on cutlery only, or with "Simeon L. and George H. Rogers Company," or other marks having the name "Rogers." While the defendant should be allowed to use any of the foregoing marks as well as the name "Rogers," its own name either as successor of William A. Rogers, Limited, or of Simeon L. & George H. Rogers Company, or as manufacturer should appear in any and all advertising and upon all cartons or containers in which goods bearing these marks or bearing the name "Rogers" are supplied, and, if the ware be guaranteed, its name as the successor or manufacturer shall appear upon the guaranty. Moreover, such name shall be as prominent both in size and type as the name of such predecessor or the name "Rogers," and such predecessor's name or the name "Rogers" shall be displayed only in conjunction with defendant's name. Likewise, sales to dealers or other parties disposing of such ware shall be accompanied by written notices in unmistakable terms that the ware shall not and cannot legally be sold or represented as Rogers ware except

as Rogers ware manufactured by Oneida Community, Limited. In the event the defendant shall adopt new trade-marks bearing the name "Rogers," it shall inscribe upon the plate the name "Oneida Community" either as successor or manufacturer. The foregoing provisions are to be a substitute for 6 (a) and (b) of the decree below. Subdivision 6 (c) of the decree should be eliminated and 6 (d) and 6 (e) should stand.

In respect to the cross-injunction granted to the defendant, it should stand as in the decree, except that subdivision 7 (a) should read as follows:

█ (a) From stating directly or indirectly to the trade or the public, or in any manner advertising or claiming that plaintiff is the sole or only concern whose ware may be advertised or sold as Rogers, or from stating that it is unfair competition to advertise or sell as Rogers defendant's ware marked with any of defendant's marks or with the name "Rogers," provided, however, the cartons or containers bearing the same or the name "Rogers," and the advertisements thereof, are marked with the name of the defendant as successor or manufacturer, and written notices are given to dealers and others, and plate bearing new trademarks with the name "Rogers" is inscribed in the way hereinbefore directed; or from stating in advertising, or otherwise in trade, directly or indirectly, that there are or ever were any injunctions or adjudications in force against such advertising or sale by the defendant or its predecessors, or that any one will be in contempt of court for thus advertising or selling defendant's ware.

The decree is modified in accordance with this opinion and, as so modified, affirmed without costs to either party.

L. HAND, Circuit Judge (dissenting).

I agree that the name "Rogers," simpliciter, cannot be monopolized by this complainant and for the reasons given, but I would go further: The "W. A. Rogers" business began in 1894, and it has been continuous ever since. In 1901 it was incorporated, only two years after the complainant gathered in six or seven other "Rogerses," and the same year that it took in "C. Rogers & Brothers." Thereafter the two businesses went along side by side, until this suit was started, and except for the abortive efforts of 1896 and 1898, which were abandoned in 1917, the complainant never uttered a syllable of protest. Indeed although in 1907 it successfully prosecuted an interloper,

I can find nothing later which suggested a claim to the name as against any one at all. The business of "W. A. Rogers," down to 1929 when the defendant bought it, was not trifling or negligible; it was not a competitor one could ignore with impunity. Between 1921 and 1928 it sold about $1,000,000 a year in what may fairly be regarded as "Rogers" brands. The complainant did not object to this and it is entirely clear why it did not object. It had no idea of making "Rogers" its mark; it was centering all its emphasis upon other marks, principally "1847." It was only when the defendant, whom it had good reason to fear, entered the field and paid down two million dollars, that it awoke to the dishonest practices of which it had for thirty years been the victim. I must own that such grievances do not impress me; if either party has any ground for complaint, the defendant seems to me to be that one. Wrongs endured with complaisance for a generation do not engender my indignation, or move me to intervene. I do not care whether one says that the complainant abandoned the name "Rogers," simpliciter, and its combinations so far as the W. A. Rogers Company copied them, or whether one says that it is estopped; for the purposes of this suit the result is the same. What we are doing is to protect trade names and marks which, as it seems to me, have been forfeited, at least as against this complainant, by every canon of law, justice and morals. I hold no brief for the defendant's own conduct; but I apprehend that in suits like this we do not protect the public, but only redress a private wrong. I can find none that this complainant has suffered.

As my views will not prevail I shall not go into the details. There are a few things that I should enjoin the defendant from calling its wares, e. g.: "Genuine," "Famous," "Celebrated." These connote a position in the trade which "W. A. Rogers" never held; that is, that the defendant's wares are more genuine, more famous and more celebrated than the complainant's. That is misleading, just as it is misleading for the complainant to say that it is the "genuine" Rogers, for there is no genuine "Rogers," though there is an "original," and on the whole the complainant is that "original." As to the "initial" marks, though I agree that they might stand without any monopoly of the name "Rogers," and though I might agree that originally the "W. A. Rogers" marks were close enough to give ground for complaint, the complainant has lost any right in

these as well, quoad this defendant, because of its long acquiescence and the defendant's reliance upon it. But it does not seem worth while to go into the evidence to see which of the supposed infringements are old enough to have secured the immunity of age, toleration and action in reliance upon both.