JOHN B. STETSON CO. v. STEPHEN L. STETSON CO., Limited, et al. *.
No. 467.

Circuit Court of Appeals, Second Circuit.
Aug. 10, 1936.

Conboy, Hewitt, O'Brien & Boardman, of New York City (Martin Conboy and David Asch, both of New York City, of counsel), for appellant Stephen L. Stetson Company, Ltd.

Gelman & Erde, of New York City (Louis I. Gelman and Joseph George Erde, both of New York City, of counsel), for appellant Hutt & Wasserman, Inc.

Clarke & Allen, of New York City (Maurice Bower Saul, Allen S. Olmsted, 2nd, and Earl G. Harrison, all of Philadelphia, Pa., and Murray F. Johnson, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

The plaintiff, John B. Stetson Company, is a corporation of Pennsylvania organized in 1891. It succeeded to the hat business founded by John B. Stetson in 1865 in Philadelphia, and it has become one of the largest and best known manufacturers of hats in the world. In May, 1906, it was granted the trade-mark "Stetson" upon an application for registration under the Act of February 20, 1905, c. 592, § 5, 33 Stat. 725 (see 15 U.S.C.A. § 85), which stated that the trade-mark had been used continuously in the business of the plaintiff and its predecessors since 1866. More than five and a half million dollars have been spent in advertising the plaintiff's hats, and the trade has come to know them by the name Stetson. From 1891 to 1931 the hats of no other manufacturer carried the word Stetson in any form.

In 1933 the defendant Stephen L. Stetson Company, Ltd., a New York corporation, was organized by Stephen L. Stetson to take over the business which he had conducted under his own name since about June, 1931. The hats which he put on the market under his name were made in the factory of the defendant Hutt & Wasserman, Inc., and the Stephen L. Stetson Company has continued the same arrangement with Hutt & Wasserman. Prior to going into business for himself, Stephen L. Stetson had been employed as a clerk with the No Name Hat Manufacturing Company, of

*Writ of certiorari denied, 57 S. Ct. 232, 81 L. Ed. —.

Orange, N. J., and after this corporation was liquidated in 1927, he became connected with the No Name Hat Company of Connecticut. As the District Court found, when Stephen L. Stetson decided in 1931 to go into business under his own name, his name had not a scintilla of good will in the hat business. The plaintiff immediately warned both defendants to discontinue the use of the name Stetson in any form. In view of equivocal advertising and confusion in the trade, the marketing of "Stephen L. Stetson" hats was held to be unfair competition, the use of the name was enjoined except under drastic limitations, and an accounting of profits and damages was awarded. From this portion of the interlocutory decree the defendants have appealed. The plaintiff was denied an injunction as to trademark infringement, and from this it has appealed.

■ The plaintiff's appeal must be sustained. The evidence is clear, and the court found, that the word "Stetson" had acquired a secondary meaning and had come to identify hats of the plaintiff's manufacture long before Stephen L. Stetson and his company entered the field. Hats are generally known to the buying public by the surname of the manufacturer—such as "Knox," "Dobbs," "Dunlap," or "Stetson" —and little attention is paid to the given name or initials. The word "Stetson" as signifying a hat appears in the Oxford English Dictionary. Under such circumstances it was inevitable that the latecomer's hats would be confused with the product of the well-known manufacturer, unless some means of differentiation were adopted, and that the addition of the prefix "Stephen L." to the surname "Stetson" would not suffice to differentiate. Hence marking the lining, sweatband, and certificate label of the defendants' hats, and the hat boxes, with the name Stephen L. Stetson was an infringement of the plaintiff's registered trade-mark "Stetson." The case of Thaddeus Davids Co. v. Davids Mfg. Co., 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322, is decisive here. There the plaintiff was the owner of the registered trade-mark "Davids'" as applied to inks. The defendants also manufactured inks and labelled them with the name of one of the partners, C. I. Davids. In deciding that the trade-mark was infringed, the court said (233 U.S. 461, at page 472, 34 S.Ct. 648, 652, 58 L.Ed. 1046, Ann.Cas. 1915B, 322) that in exercising their right to use their own name in trade it was not necessary that the defendants "should imitate the mark which the complainant used; * * * or that they should use the name in question upon their labels without unmistakably differentiating their goods from those which the complainant manufactured and sold." Because of references in the opinion to imitation of the plaintiff's labels, the District Judge thought that the case was inapplicable. We have had the advantage, which he did not have, of seeing the defendants' labels which were introduced as exhibits in the Davids Case and have been sent by the marshal of the Supreme Court to the clerk of this court. They disclose that the defendants made no attempt to imitate the plaintiff's labels in color, size, or form of letters, or arrangement of words. There was at least as much difference in the general appearance of the conflicting labels in that case as in the case at bar. Consequently we understand the Davids Case to go upon the principle that the defendants could not "use the name in question * * * without unmistakably differentiating their goods" from those of the plaintiff. The addition of Davids' initials "C. I." did not suffice there. No more does the addition of "Stephen L." to the surname Stetson suffice here, in view of the testimony of the ensuing confusion in the trade. The decree should have found and enjoined infringement of the plaintiff's trade-mark.

■ In support of the defendants' appeal, it is argued that the findings upon which the trial court concluded that the defendants practiced unfair competition are unsupported by the evidence. In substance the argument is that a man has a right to use his own name in trade, unless a fraud is intended, and that Stephen L. Stetson Company, Ltd., which has succeeded to the right of its president, should not be required to do more than print the full name in letters of equal size, as it always has done. We do not understand that the right to use one's own name is absolute unless fraud is consciously planned. A newcomer whose name will cause the public to confuse his product with that of an established competitor may be required "to take reasonable precautions to prevent the mistake." Waterman Co. v. Modern Pen Co., 235 U. S. 88, 94, 35 S.Ct. 91, 92, 59 L.Ed. 142; Herring, etc., Safe Co. v. Hall's Safe Co., 208 U.S. 554, 559, 28 S.Ct. 350, 52 L.Ed. 616; Thaddeus Davids Co. v. Davids Mfg. Co.,

233 U.S. 461, 471, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322; Coty, Inc., v. Parfums de Grand Luxe, 298 F. 865, 875 (C.C.A.2); R. B. Davis Co. v. Davis, 75 F.(2d) 499 (C.C.A.2). Nor, if intent to palm off were essential, should we disagree with the trial court's conclusion that "by most artfully devised advertisements, worked out in collaboration with a lawyer," Stephen L. Stetson and his corporation "succeeded in maintaining in the trade a state of what was to him a very advantageous uncertainty as to his relation to the plaintiff and in giving thereby a background for the dealer misrepresentations above mentioned." Cf. International Silver Co. v. Oneida Community, 73 F.(2d) 69, 73 (C.C.A.2). It was plain that the name "Stephen L. Stetson" taken alone would cause confusion, as it did; and the talk about family tradition undoubtedly further tended to promote that confusion. In the main, therefore, we are satisfied that the conditions imposed by the decree upon the continued use of the name were reasonable requirements. But paragraph VI thereof seems unnecessarily drastic and would result in giving the plaintiff the names and addresses of all present and future dealer customers of the Stephen L. Stetson Company. The decree will be modified by striking out the requirement that copies of letters to dealer customers be annexed to the affidavits of compliance.

Hutt & Wasserman, Inc., contend that they did not participate in the acts of unfair competition and should not be subjected to an injunction and an accounting. Whether they were properly found to have participated in the acts of unfair competition has become academic in view of our decision that the plaintiff's trade-mark was infringed. If Hutt & Wasserman participated in the manufacture of the hats which carried the infringing mark, they are infringers of the trade-mark. Cuervo v. Jacob Henkell Co., 50 F. 471 (C.C.S.D. N.Y.); Nims, Unfair Competition & Trade Marks (3d Ed.) pp. 771, 972. They argue that they merely leased space in their plant and "loaned" their employees to the Stephen L. Stetson Company, and did not themselves manufacture its hats. The basis for this argument is afforded by the contract between the parties which is set forth at length in the opinion below and need not be repeated here. The argument is ingenious but specious. We agree with the District Judge that the contract, though in form a lease, was really a contract for manufacturing service to be performed by Hutt & Wasserman, and for which they were to be paid in part by reimbursement for the wages of their piecework employees and in part by a percentage of the invoice price of the hats manufactured. They may properly be included in the injunction and accounting.

The decree is modified as indicated in the foregoing opinion, and as thus modified is affirmed. Appellate costs are awarded to the plaintiff.